Next case, the Business Edge v. Champion Mortgage Mr. Gooby May it please the court, my name is Stephen Gooby with the law firm DLA Piper I represent the appellant, the Business Edge Group I would like to reserve three minutes for rebuttal Aye, Mr. Gooby Your Honor, the central issue of this appeal is whether the routing of telephone calls that are made to a toll-free number by the subscriber to that number to another entity for a fee constitutes a brokering or sale of that number between those two private parties and in this case we have that exact same situation That is a very important issue Could you tell me what the Business Edge is in the business of doing The Business Edge Group is a small telecommunications service company It does a variety of things, it owns its own computers and switches for routing telephone calls It does things such as call answering services It does things such as call sharing arrangements which I think is a good point to illustrate if you're not familiar with that Is it part of Business Edge's business to get 800 numbers and to broker those numbers to other entities It is not, Your Honor There is no brokering or sale component of what the Business Edge does The Business Edge has no interest in selling numbers Well, I'm not talking about sale I'm talking about getting 800 numbers that it then can broker or that it can then route to other entities Yes, again, Your Honor, the Business Edge Group does not broker numbers It will acquire numbers as a subscriber and is now also a responsible organization, a REST Board Okay, you can get rid of the verb, but you do get 800 numbers You got the champion mortgage number with a specific purpose And the specific purpose was to, you say route, to route it to champion mortgage Correct, to use not just the champion number, other numbers as well to be used in conjunction with the Business Edge Group's telephone call servicing And, for example, in addition to I'm sorry to interrupt you, Mr. Kirby I know you have things you want to say, but I do want to push this point a little bit further When you say this number and others, part of their business model is getting numbers that they think businesses are going to want and then charging a fee to them for that business who's interested in that number I mean, it's no accident that the numeric sequence Business Edge got worked out to be a champion vanity number and that you approached champion about it, right? That's right, Your Honor And vanity numbers are used as part of the Business Edge Group's business And, for example, as in some of the cases that we've cited the Business Edge Group, for example, is a subscriber to a number 1-800-COLLISION And what it does with that number is a call sharing system where its customers are body shops in different parts of the geographic United States And what Business Edge Group does is when calls are received into that number it determines where those calls originate from and then routes them to that body shop in that territory But you can only do that if you get the number in the first instance That's correct, Your Honor And that number that you got involving champion mortgage is not the only 800 number that you were using for that business purpose for routing For routing for the various services I mean, isn't Business Edge in the business of getting 800 numbers so that it can then route them to other entities? It's really not, Your Honor It's the service aspect that is the focus of its business For example, many, if not most, of the services it provides are for customers that already have their own numbers They are the subscribers The customers are subscribers, not Business Edge Group So the customers bring their numbers to the Business Edge Group and say, you know, what kind of services do you provide? Can we have call answering? Can we have call sharing? Can we have one call reunion in one office and the next call reunion in the next sales office? I tend to agree with you in the sense I have some trouble getting my arms around this concept of a sale because I envision traditional notions of a sale as you give up something and you get compensated in return But on the other hand, I'm somewhat sympathetic to the district judge's finding here and the district judge considered the difference between the cost that you charge for routing, which is fairly minimal and the cost that you charge champion mortgage here, which is quite substantial Why doesn't that look more like a sale than a routing practice? Well, I don't think that there's a sliding scale of what eventually becomes a sale I think there's either a sale or there is no sale, regardless of what the cost is If it was $100,000 a month, I don't think you could say Well, that's probably a sale and $25,000 might be and $10 is not I don't think that's an analysis Well, you'd agree, wouldn't you, that even if price alone doesn't make something a sale or not a sale that it's possible to paper something one way, call it one thing and have it be in fact another thing You can elevate form over substance if one wants with skilled legal advice and substantively you'd still have that other thing So you could structure something and not call it a sale but in fact it would have all the legal attributes of a sale That's theoretically possible, isn't it? I think it is theoretically possible and I think if you find yourself faced with that possibility that you look at the agreement, you look at the language of the agreement The agreement that is in place here is of a short duration, it's a five-year term It does not contemplate the transfer of anything except routing of telephone calls to Champion Business Edge Group continued to be the subscriber Champion was not the subscriber, never was and never was contemplated to be Unlike the John case, which we cite in our brief, there was an actual sale because the subscriber, which was Capital Warehousing, actually called AT&T and said Make 800 Flowers, make that company the subscriber and that was a sale and in exchange they received royalties and payments Separate from the issue of sale, the FCC says that hoarding occurs when toll-free subscribers acquire more numbers from a phone company than it intends to use for the provision of toll-free services Your position is that you did not hoard 800 numbers That's correct, Your Honor In this case, if we're looking at the Champion number that is and we'll call it the Champion number and keeping in mind that Champion, the company is the subscriber to 1-800-CHAMPION, spelled as it's spelled My client is the subscriber to 1-800-CHAMPION with a mistyled number Instead of the O in Champion, it's a zero I understand all of that, but if discovery were to take place and you were to ask how many 800 numbers you own, like one of the other cases that were cited in the briefs, the entity owned 6,800 numbers You would not have anywhere near that, I suppose Not anywhere near. At the time, I don't know what the current state of affairs is now but at the time the agreement was entered in 1999, it's my understanding that there were that Business Edge Group was a subscriber to several 800 numbers but it was by no means a handful of numbers, it was by no means 6,000 or multiples of that Mr. Gooby, one of the issues that concerned me when I read the papers was not briefed and that's the question whether this factual situation should be transferred to the FCC under the primary jurisdiction doctrine It seems to me the question, if we were to consider that, would be whether any non-permanent transfer or use of a number under circumstances such as this could ever be considered a sale What is your answer to the issue of the transfer? As we've argued in motions in the court below, it's our business, Business Edge Group's position that there is no need to send this to the FCC because this court is fully competent to address the issues that are presented here The FCC, if we had an issue of interpreting a tariff, which is not an issue here If we had an issue of interpreting what this regulation meant, if it was unclear Isn't that what we have? Interpreting what this regulation means because it's unclear? I don't think so, Your Honor. I think it's made unclear perhaps from Champion's perspective because as I read their papers, they attempt to add additional words and language to the statute that aren't there But I think if you look at the plain language and the plain meaning of the words that are used You can't sell a toll-free number, you can't broker They start with broker, but then they define what brokering is Number brokering, which is the selling of a toll-free number by a private entity for a fee Well, now we know what brokering is And I think we can use the plain meaning of sale, as we commonly understand it to say whether or not something was sold So this court can address that. I don't think the FCC is needed to interpret what is meant by that Are you suggesting that we can look to the definitions of the word sale or selling in the dictionaries? Because they're all over the place. Some require an actual transfer, some don't I think if we look at the John case, which is the Seventh Circuit addressing a similar issue here And what they found, they found that there was a sale And as I described before, in that case the sale was the actual transfer of a number from one subscriber to another There's no sale here. It's our position there's no sale here largely because this is a short duration agreement This is a five-year term. At the end of five years, if the agreement is not renegotiated, Champion has nothing They do not get the calls anymore. They have not obtained any sort of right to this number How can that be a sale? That's our position Let me ask you this, if I might, Mr. Gooby Your position is that the District Court is just wrong that this is a sale Yes, Your Honor Do you accept that the District Court was right that the facts here are undisputed? We do, yes, and we submitted it to the District Court for a determination on the law I think the facts in this case are, for all intents and purposes, not disputed And you don't disagree with what the District Court has laid out in the opinion in this case? As far as the factual presentation, Your Honor? Right Largely, we agree with it. I think there's some emphasis and I think there's some word choice For example, just one example, when there's a discussion about my client going to a consultant and looking to determine what the contract price should be for this agreement There's a repeated use to this consultant giving an estimate of what the value of the number is But the facts are, this consultant was asked to and gave a value of the phone calls to Champion Because that's what Champion was getting, and came back with $50 per phone call And that's even cited in Champion's brief Although they say, in argument, that it was valuing the number When they cite the factual record, the site is too valuing the phone calls I think that's an important distinction Based on your interpretation, you could never have a sale It sort of makes the word sale meaningless Oh, I don't think so, Your Honor If you don't own the phone number, you're always routing You could never have a sale Well, I think, again, at the risk of belaboring the point Returning to the John case, they addressed that issue And they said, well, it is a strange situation where you don't have a property right or a title And you're selling it to somebody But they said, in examples such as broadcast licenses, for example You can sell those, but you don't really own a broadcast license So, that's a similar sort of situation that we have here So, in other words, you can sell a phone number, even though you don't own it You can, but it wouldn't be permissive to do so What you're saying, are you saying that short of the John case Where somebody calls up and says, all right, now transfer that to this other party That short of that, there's no such thing as a sale of the number? I think you have to look at what rights to the number If we can call this the purchasing party would receive And I think at minimum Champion, what did Champion get as a result of this agreement? Not what you got It's our position that Champion got the calls We, the business age group, retain the right to being the subscriber to the number But you didn't get a fee for routing the calls You got a fee that was based on the value to the number to Champion It wasn't a simple routing service I think it's an important distinction, your honor What Champion was looking at was getting the calls They didn't care about the number per se They wanted the number at first and they offered to buy it That was rejected What they wanted though was the calls They didn't want anyone else to get the calls that were being made to that number And the value to them of receiving those calls is where this calculus came from So we're not talking about putting a value like a car is worth $1,000 We're talking about what the value to their business is Of being able to get that resource Those phone calls that they could translate into business opportunities and profits in the mortgage context Just one question relating to the value issue Under the first contract between your client and Champion The average payments for the routing services totaled about $1,500 a month Then you had GELT financial value Either the value of the service to Champion or the value of the calls And the contract price in the second contract that issue here is $25,000 a month And that's what the district court relied upon in saying sale How do you explain the difference in the two charges? Well, in the first agreement, that was an exploratory agreement Everybody acknowledges that, I don't think it's disputed And I liken it to a gym membership where they try to bring you in to be a lifelong member of the gym They'll give you three or six months for free They want you to come in and try it out to see if it works for you And if it works for you, okay, then you're going to pay what the price is So the first part of it was an introduction It was basically at cost, let's see if this number does anything for you And if it does, then we'll talk about a long-term relationship So that's what the initial part of this was And Champion recognized through some 400 or 500 calls a month And through notations on the call records That some of those calls were business opportunities that actually resulted in mortgages Champion did its own calculation independent of GELT financial There was never any discussion between those two Champion looked at its own business And Champion came up with the number that was ultimately accepted by my client Based on what information he got from his consultant So there was never, my client was not involved in Champion doing their calculation As to what they thought those calls were worth to them That's the number Champion came up with Isn't it clear though on those undisputed facts That what's being charged for is not simply a routing service What's being charged is, by everybody's admission Some dollar figure that represents what that vanity number Can bring in in the way of business to Champion I mean, that's not just routing Because you couldn't have gotten anybody else on the planet to pay $25,000 for it Only Champion Mortgage, with an interest in that Was ready to ante up that money because it meant It was akin to a business asset, right? Exactly, I don't think there could be If you're charging somebody for something that's akin to a business asset And you're charging them that over time Doesn't that start, even if it doesn't get all the way to the finish line of a sale Doesn't that start to look more like a business transaction Involving the transfer of the value of an asset than a routing service? I don't intend to engage in semantics here, Your Honor That's what we've got to engage in because we're talking about what a sale is Yes, I guess, I think what the calls represent is not a business asset Because Champion wasn't looking to, they were looking to purchase the asset They couldn't do it, so what did they do? What was the next best thing? To get access to that access To get the business opportunities that that asset represented What if this thing was a rental agreement for 30 years? 30 years, $25,000 a year And everybody was sort of acknowledging that Well, 30 years telecommunications industry could be totally different So who cares? 30 years does it Is that a sale? I don't think it's a sale Because I think if the parties chose to enter into that risky of a long-term agreement And I think part of the problem we have here Champion's displeasure with the deal that they made Was the advent of the internet and new technology Lessened the need for 800 numbers What if it was a 30-year deal with no payments due after 5 years? Because after 5 years you'd have paid $1.5 million And that's good enough for us I think that would be a sale, your honor So I think if you look at it in that context, that would be a sale I think if, for all intents and purposes If you pay one price, no matter what it may be or how long it takes you Once you pay that price, you then have unrestricted access to the number I think that might devolve into a sale But that, again, is not what happened here We have a short-duration agreement Mr. Gooby, you've gone well over your time I thank you very much You've reserved some three minutes, I believe, for rebuttal Thank you Mr. Burns We'll have to give you, Mr. Burns, a similar amount of time if you need it Thank you May it please the court, this is Tom Burns from the law firm of Reed Smith And I represent the Apelli Champion Mortgage Company in this matter Your honor, based upon the questions you've asked my colleagues I don't intend to belabor the point that I believe the trial court was right I think that the record made clear that this transaction In this transaction, no consideration was paid by Champion to the Business Edge for routing services In fact, I think the record makes clear that routing services was never discussed by the Business Edge And Champion, with respect to how it's done and what the cost of it is How is it a lease? I said to Mr. Gooby, I have trouble getting my hands around this notion of a sale When you signed a contract that was for 60 months, you were paying a monthly fee The telephone number, the 800 number, would revert back to Business Edge after the 60-month period Of course, you had the first option to continue the contract How is that a sale of a telephone number? As opposed to, say, a lease? I don't think it is a sale I think the issue I'm addressing is whether or not number brokering in violation of FCC regulations has to be a sale And I'm asserting in my papers in here today that it doesn't I know that the regulation refers to brokering as the sale of a number However, we've also cited two other memoranda So your view is that because it was number brokering alone, that is sufficient to invalidate the contract? Correct, your honor And your position is that brokering, even though the specific language of the regulation is Quote, number brokering, which is the selling of a toll-free number by a private entity for fee, unquote Is something other than a sale Brokering, which is selling, in Champion's view, is something other than selling It is, your honor, and not just based upon the language of the regulation There are other, there are memoranda in order from the Federal Communications Commission discussing the issue of brokering And indicating that it's more than selling, that it includes bartering and leasing of a number That it's illegal to do, just as selling is And for the same reasons, and I think for two One, the business agent doesn't own the number You can't sell what you don't own You can't lease what you don't own You can't give a license for what you don't own And contrary to its representation in the 1999 agreement That it was the owner and had the right to benefit from the number The law clearly states that no one owns telephone numbers, that they're a public resource That no one can claim ownership to And the other reason goes to the policy reasons why the regulation was passed in 1997 That to ensure the orderly use and allocation of telephone numbers Including toll-free telephone numbers That they were not allowed to be sold, leased or bartered Not to be allowed to use for the private gain of a few Who were able to gain access to certain desirable numbers So with respect to the law, that is Champion's position I would also note, my colleague referenced Before you go on, when you say with respect to the law The FCC may have said things in reports But are we bound by what the FCC says, sort of offline? Or are we bound by what's a properly promulgated regulation? Your Honor, I think the reports are properly considered And I say this in conjunction with my next point Which was the Yon case that was cited Or John that was cited by my colleague on a couple of occasions during his argument In that case, while it dealt with a specific sale A transfer of a number to another subscriber And then receiving a royalty There was a discussion in the Yon case About whether or not the transfer for value of a number In any circumstance, or in all circumstances Constitutes brokering, not just a sale But the term used was transfer for value And they concluded that based upon the regulation And memorandum from the FCC That it was unclear, at least in the Seventh Circuit's mind Whether or not every transfer for value of a telephone number Constitutes brokering And did suggest, Judge Du Bois mentioned The possibility that that should be initially considered by the FCC Would you clarify for me Did you say that brokering does not include a sale? Brokering does include a sale But it's broader than a sale in your view I believe that, Your Honor Now, here's the question that your argument raises And I may just be rephrasing what I said before So forgive me We're to apply the law The law being, in this instance 47 CFR 52.107 There's language in that regulation And it went through, presumably The process that a regulation has to go to To be properly promulgated And have the force of law, right? I agree, Your Honor Okay So, what I hear you telling me though is The FCC said some other things Which make the language of brokering Broader than the language that's in this regulation Because there's no disputing what the regulation says It's there in black and white Brokering is the selling, right? I agree, Your Honor That language says what it says So, are you asking us to give the force of law To something the FCC has said Which has not gone through The proper regulatory process to be promulgated And then given the force of law as a regulation? I'm asking you, Your Honor To give the force of law to the FCC's interpretation And construction of its own regulation And sale is something peculiarly Within the province of the FCC? The sale of a toll-free Or the brokering, Your Honor Of a toll-free telephone number Or any telephone number, I believe, would be The purpose of the regulation As I see it, is to prevent hoarding That's to keep entities from accumulating Any number of 800 telephone numbers So that they're widely available And they said that hoarding is against public policy So if you had hoarding of telephone numbers in this case You would have a basis for invalidating the contract But hoarding was not an issue that was addressed, I gather It wasn't, Your Honor, because for purposes of champion We're dealing with this one specific number But it is hoarding to the extent that Here's how I would say it was hoarding, Your Honor There's no question this number was targeted by the business edge Because of its potential mortgage application It wasn't obtaining that number for its own use It wasn't obtaining that number in the general course Of obtaining the right to use toll-free telephone numbers And route them to people It was obtained for a specific purpose To target to a specific client In order to maximize the value of that number And there should be no value It shouldn't be transferred for a fee According to the FCC regulations Well, Mr. Burns, did you folks argue hoarding in the district court? Was that any argument made in any fashion before the district court? It was included in the paper, Your Honor To the extent that brokering under the regulation Is considered part of hoarding Hoarding includes brokering and brokering means So we did discuss hoarding in the context of our papers Before the district court And you talked about what Was there any factual record developed As to whether or not this was hoarding by That this represented a piece of a hoarding strategy By Business Edge? Your Honor, I think the facts clearly show What the business strategy of Business Edge was With respect to this number Sure, but I'm trying to follow up On what Judge Fuentes is asking you And the question I've got is You know, this is an intriguing question to us But was it ever fairly presented to the district court? Was it ever developed in discovery? Was it argued in any meaningful way? Not as an aside in saying, well, hoarding is also But was it a topic of discussion and discovery And contention before the district court? Your Honor, I don't believe it was I believe hoarding was included in the argument of brokering That brokering as a subset of hoarding Was the issue discussed before the district court And on the question of primary jurisdiction You did argue that in the district court But if I'm correct That wasn't argued in the papers before us, was it? That's correct, Your Honor But the champion did not cross appeal Seeking that it be transferred to the FCC For primary jurisdiction Is that a waiver? It's a waiver for the champion to argue today And it should be I don't believe that it affects the court's ability To spontaneously decide that it should be Sent to the FCC for consideration So you're content with the position That Business Edge brokered a telephone number Contrary to the FCC regulations And therefore the contract should be invalidated That's correct, Your Honor The brokering is tantamount to a sale Correct, Your Honor Of a number It is All right Anything else, Mr. Burns? Nothing for me, Your Honor Unless there's something else you'd like me to address I have no further questions Thank you, Mr. Burns Thank you Mr. Gooby Three minutes rebuttal Your Honor, just one very, very brief point In our reply brief at page 6 We point out that one of the reports That champion relies upon For its expansive view of what brokering is Actually has a footnote, footnote 10 That says brokering is the buying or selling of numbers So I think the FCC's position In its regulation, in its reports Is consistent It doesn't go beyond the notions of a sale As the plain language of the regulation state That's all I have Thank you, Mr. Gooby, very much The case was well argued We'll take the matter under advisement Thank you Judge O'Bries is joining us for these first two cases And we will be taking the next case Which is the Carrascosa case next However, we're going to change panels And we'll take a short recess for that purpose Court will recess for about five minutes The Honorable Judges of the United States Court of Appeals For the Third Circuit The court is now in session Thank you, please be seated We are again assisted by a judge   And we'll take a short recess The Honorable Judge of Pennsylvania Distinguished Judge Thomas O'Neill Judge Jordan and I welcome him And thank him for helping us out With this very difficult case